```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                        DISTRICT OF VERMONT
```

YOLANDA BLAIR,                    :
                                  :
        Plaintiff,                :
                                  :
        v.                        :     Case No. 2:14-cv-158
                                  :
FAIRPOINT COMMUNICATIONS,         :
INC., NORTHERN NEW ENGLAND        :
TELEPHONE OPERATIONS, LLC         :
AND TELEPHONE OPERATING           :
COMPANY OF VERMONT, LLC,          :
                                  :
        Defendants.                :

## OPINION AND ORDER

Plaintiff Yolanda Blair brings this action claiming injuries resulting from a 2011 automobile accident.  The accident occurred when the sedan in which Blair was a passenger collided with a utility truck.  Blair claims that the driver of the truck was at fault.

The utility truck had the words "FairPoint Communications" printed on the side, and Blair has named FairPoint Communications, Inc. ("FairPoint") as a defendant.  FairPoint now moves for summary judgment, arguing that it has no liability because the driver of the truck was not a FairPoint agent or employee.  For the reasons set forth below, FairPoint's summary judgment motion is **granted**.

## Factual Background

On August 2, 2011, Blair was a passenger in a 2000 Mitsubishi sedan driven by Schatzilein Buck.  Buck and Blair were

traveling on Route 5 in Irasville, Vermont when a 2008 Ford bucket truck driven by James Baker reportedly pulled out in front of them at an intersection.  Baker's alleged negligence caused Buck to crash into the side of the truck.

The question posed by FairPoint's motion for summary judgment is whether it can be held liable for Baker's actions. Although the truck bore a "FairPoint Communications" logo, Baker was employed by Northern New England Telephone Operating Company. FairPoint has offered undisputed evidence that Baker was never documented in its records as an employee, never received a W-2 tax form from FairPoint, and for the year 2011 received his only W-2 form from Northern New England Telephone Operations LLC.

Blair nonetheless claims that Baker was an agent of FairPoint.  In support, Blair contends that defense counsel made representations in the course of settlement negotiations indicating that FairPoint was a liable party.  For example, a letter from defense counsel to Blair's attorney stated that "[b]efore meeting you and [co-counsel] I had met with FairPoint's driver, James Baker."  ECF No. 38-2 at 1.  In that same letter, counsel referred to FairPoint as a potential party to a settlement.  *Id.* at 2.  Blair further cites the police report identifying "Fairpoint Communications" as the owner of the truck; a certificate of liability insurance naming "Fairpoint Communications" as the insured; a "Release of Property Damage"

2

listing both FairPoint and Baker as releasees; and a letter referencing FairPoint as the insured. ECF Nos. 38-4, 38-5, 38 at 4. Finally, Plaintiff cites Baker's traffic court testimony in which he concurred with the statement that he was a "Fairpoint" employee. ECF No. 38-6 at 2.

FairPoint responds that none of these facts prove either an employment or agency relationship. In its reply memorandum, FairPoint explains that "FairPoint Communications NNE" is a trade name registered in Maine and used by Northern New England Telephone Operating Company. ECF No. 45 at 3-4; ECF No. 45-2. Defense counsel represents that Northern New England Telephone Operating Company is a FairPoint subsidiary. ECF No. 45 at 4. In his deposition, Baker testified that he was never a FairPoint employee. ECF No. 37-5 at 5-6. Furthermore, Baker's Department of Motor Vehicles accident report identified the truck's insured as Northern New England Telephone Operating Company. ECF No. 45-1 at 2-3. FairPoint also argues that much of Blair's argument relies upon inadmissible settlement communications and/or hearsay.

## Discussion

A party is entitled to "summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of

demonstrating that no genuine issue of material fact exists and must "identify[ ] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–325 (1986) (citation and internal quotation marks omitted).

"A genuine issue of material fact is one that 'might affect the outcome of the suit under the governing law' and as to which 'a reasonable jury could return a verdict for the nonmoving party.'" *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004) (internal quotation marks omitted).

"The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

Here, the issue is whether FairPoint may be held liable for Baker's alleged negligence.  Blair submits that while Baker may not have been a FairPoint employee, he was nonetheless an agent of FairPoint.  As discussed above, Blair claims support from the logo on the truck, representations by defense counsel in the course of settlement negotiations, the police report, insurance and release documents, and Baker's own traffic court testimony.

Under Vermont law, "[a]n agency relationship results when one party consents to another party acting as its agent." *Kimco Leasing Co. v. Lake Hortonia Prop.*, 161 Vt. 425, 429 (1993); *see also* Restatement (Second) of Agency § 1 (1958).  "The agent must also acquiesce to the arrangement and be subject to the principal's control."  *Id.*  Here, there are no allegations or record evidence to suggest that FairPoint consented to Baker acting as its agent, or that Baker acquiesced to an agency relationship.  Furthermore, there is no allegation that Baker was under FairPoint's control.

With no evidence of an actual agency relationship, Blair turns to the doctrine of apparent agency, arguing that certain representations by the parties and counsel suggested an agency relationship.  "An apparent agency relationship may exist if the principal has manifested by [its] conduct to a third party that the agent has authority to act for [it], and the third party reasonably believes that the other individual is the agent."  *RLI*

5

*Ins. Co. v. Klonsky*, 771 F. Supp. 2d 314, 326-27 (D. Vt. 2011) (citing *Kimco Leasing Co.*, 161 Vt. 425 at 429-30). "Apparent authority 'derives from conduct of the principal, communicated or manifested to the third party, which reasonably leads the third party to rely on the agent's authority.'" *Lakeside Equip. Corp. v. Town of Chester*, 173 Vt. 317, 325 (2002) (quoting *New England Educ. Training Serv., Inc. v. Silver Street P'ship*, 148 Vt. 99, 105 (1987)). "Liability under the doctrine 'exists only to the extent that it is reasonable for the third person dealing with the agent to believe that the agent is authorized.'" *Doe v. Forrest*, 2004 VT 37, ¶ 23 (quoting Restatement (Second) of Agency § 8 cmt. c).

The doctrine of apparent agency is a poor fit with the facts of this case. Tort liability based on apparent agency is typically limited to cases where the agent is "dealing or communicating with a third party on or purportedly on behalf of the principal." Restatement (Third) of Agency § 7:08 (2006). This case is a negligence action centering on a car accident. There is no allegation of a "dealing or communicat[ion]" prior to the collision, and the only suggestion of an agency relationship at the time of the accident was the logo on the side of the truck. Even if the Court accepts the assertion that such logo was a manifestation of an agency relationship between Baker and FairPoint, there was no reliance that could conceivably have had

any bearing on the events leading up to the accident.  *Id.*

The thrust of Blair's agency argument pertains to facts that occurred or were discovered after the accident.  First, she cites the police accident report, on which the officer noted that the owner of the vehicle was FairPoint.  An insurance certificate was also produced in discovery, naming FairPoint as an insured.  However, ownership of the vehicle does not determine liability. "With few exceptions, the owner of a motor vehicle is not liable at common law for the negligent operation of the vehicle by a person to whom he or she has loaned it, so long as the latter is not operating the vehicle as an agent or employee of the owner." 8 Am. Jur. 2d *Automobiles* § 640 (collecting cases).  Therefore, under common law, FairPoint's ownership of the truck does not render it liable for Baker's actions in the absence of an agency or employment relationship.

Blair also submits that communications from defense counsel led both her and her attorneys to believe that FairPoint was a liable party.  Blair contends that given those representations, FairPoint should be estopped from denying an agency relationship at this stage in the proceedings.  Counsel's representations, however, have little bearing on the actual relationship between FairPoint and Baker.  References in settlement negotiations to "FairPoint" do not mean that, in the event of a settlement, money would be forthcoming from either FairPoint Communications, Inc.

or its insurer.  As indicated by Baker in his accident report and subsequent deposition testimony, his employer was Northern New England Telephone Operating Company, a FairPoint subsidiary. Given the apparent corporate relationship between Baker's employer and FairPoint, it is understandable that defense attorneys might refer to the defendant as FairPoint.  For liability purposes, however, the undisputed facts demonstrate that Baker was not either an employee or an agent of FairPoint Communications, Inc.  FairPoint's motion for summary judgment is therefore **granted**.

## Conclusion

For the reasons set forth above, FairPoint Communications Inc.'s motion for summary judgment (ECF No. 37) is **granted**.

DATED at Burlington, in the District of Vermont, this 4th day of January, 2016.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge